```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
ANTHONY HOLLAND,

                    Plaintiff,
                                            05 Civ. 5346 (KMW)(KNF)
          -against-                         OPINION AND ORDER

CORRECTION OFFICER JAMES, CORRECTION
CAPTAIN BROWN, CORRECTION CAPTAIN
GREEN, and DEPUTY WARDEN TAYLOR,

                    Defendants.
----------------------------------------x
```

KIMBA M. WOOD, U.S.D.J.:

Plaintiff Anthony Holland ("Plaintiff"), proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983. In January 2006, the Court entered default against three defendants: Correction Captain Brown ("Brown"), Correction Captain Green ("Green"), and Deputy Warden Taylor ("Taylor") (collectively, the "Moving Defendants").[1] The Moving Defendants now move to vacate this entry of default.[2] For the reasons stated below, the Court

---

[1] On January 11, 2006, the Court referred this action to Magistrate Judge Fox for an inquest after default. (See Jan. 11, 2006 Order; D.E. 9.) The Court thus informally entered default against the Moving Defendants. However, the Court never formally entered default in this case. See Fed. R. Civ. P. 55(a) (requiring that "the clerk must enter the party's default").

[2] The formal entry of default "affords the defaulted party an opportunity to move, pursuant to Rule 55(c) to vacate the default, at least in those instances where the defaulted party becomes aware that a default has been entered." Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996). Although the Court never formally entered default in this action, the Moving Defendants are aware of the Court's informal entry of default and move pursuant to Rule 55(c) to vacate this entry of default. Accordingly, the Court applies Rule 55(c) standards to the motion to vacate. Cf. Raheim v. New York City Health & Hosps. Corp., No. 96 Civ. 1045, 2007 U.S. Dist.

1

GRANTS the motion to vacate the entry of default.

## I. Procedural History

On June 6, 2005, Plaintiff filed his complaint. Plaintiff named the following individuals as defendants: Brown, Green, Taylor, and Correction Officer James ("James") (collectively, "Defendants").[3] (See Compl. ¶ I(B); D.E. 2.)

The docket sheet for this action indicates that on June 30, 2005, the United States Marshals (1) executed service of the summons and complaint on the Moving Defendants,[4] and (2) were not able to execute such service on Defendant James. The Moving Defendants thus were required to answer the complaint no later than July 20, 2005.

---

LEXIS 59573, at *9-10 (E.D.N.Y. Aug. 14, 2007) (applying Rule 55(c) standards to a motion to vacate "although no formal entry of default ha[d] been made").

[3] Plaintiff also named unidentified Correction Officer John Doe as a defendant. (See Compl. ¶ I(B).) The docket sheet for this action indicates that this individual has not been identified.
On an additional sheet of paper attached to the complaint, Plaintiff also named Correction Captain Coleman and New York City Department of Correction Commissioner Martin Horn as defendants. (See Compl. ¶ I(B).) The docket sheet for this action indicates that neither individual has been served with the summons and complaint. Furthermore, Plaintiff has not brought this lack of service to the Court's attention. Should Plaintiff wish to pursue this litigation against Correction Captain Coleman and Commissioner Horn, he must submit a written request to Magistrate Judge Fox to issue an amended summons. If Magistrate Judge Fox issues an amended summons, Plaintiff must then contact the Pro Se Office of the United States District Court for the Southern District of New York (the "Pro Se Office") regarding service of the amended summons on these two individuals.

[4] Correction Officer Rudolph accepted service on behalf of Defendants Brown and Taylor. Correction Officer Lumbardi accepted service on behalf of Defendant Green.

2

The docket sheet for this action indicates that on July 10, 2007, the United States Marshals (1) executed service of the summons and complaint on Defendant Brown (for the second time) and Defendant James (for the first time) (see D.E. 18, 20),[5] and (2) were not able to execute such service on Defendant Taylor (see D.E. 19). The docket sheet further indicates that on July 17, 2007, the United States Marshals executed service of the summons and complaint on Defendant Green (for the second time).[6] (See D.E. 17.) Defendants Brown and James thus were required to answer the complaint no later than July 30, 2007, and Defendant Green was required to do the same no later than August 6, 2007.[7]

---

[5] Vigo M. accepted service on behalf of Defendants Brown and James. (See D.E. 18, 20.)

[6] Andrew Pereiro accepted service on behalf of Defendant Green. (See D.E. 17.)

[7] To provide a complete chronology of the events surrounding the two rounds of service of the summons and complaint, the Court notes:
    On June 28, 2005, two days prior to the first round of service of the summons and complaint, the Court referred this action to Magistrate Judge Fox for general pretrial matters and dispositive motions. (See June 28, 2005 Order; D.E. 3.) On December 1, 2005, after the Moving Defendants failed to timely respond to the complaint, Magistrate Judge Fox directed Plaintiff to review Rules 41 and 55 of the Federal Rules of Civil Procedure, and thereafter "make [any] application to the court as he deems appropriate." (Dec. 1, 2005 Order 1; D.E. 8.) On January 11, 2006, the Court referred this action to Magistrate Judge Fox for an inquest after default. (See Jan. 11, 2006 Order.)
    On January 26, 2006, Magistrate Judge Fox directed Plaintiff to submit various inquest materials, including "proposed findings of fact and conclusions of law," to the Court through the Pro Se Office. (Jan. 26, 2006 Order ¶ 2; D.E. 10.) Magistrate Judge Fox further directed the Pro Se Office, upon receipt of Plaintiff's inquest materials, to "provide five copies of the inquest materials, along with five copies of [the January 26, 2006 Order], to the United States Marshal" to be served on the Defendants. (Id. ¶ 6.) On March 27, 2006, Plaintiff submitted his proposed findings of fact and

On September 14, 2007, the Office of the Corporation Counsel ("Corporation Counsel") informed Magistrate Judge Fox that "[d]espite the procedural posture of this case," it "was unaware of the pendency of this action" until Defendant James requested representation through the Legal Division of the New York City Department of Correction ("DOC Legal") after he received the summons and complaint. (See Sept. 17, 2007 Order; D.E. 21.) On September 17, 2007, Magistrate Judge Fox granted Corporation Counsel's requests for extensions of time to (1) "investigate the circumstances surrounding the alleged default" of the Moving Defendants; and (2) "answer or otherwise respond to the complaint" on behalf of Defendant James. (See id. 1-2.)

On October 22, 2007, the Court granted Corporation Counsel's later requests to (1) move to vacate the entry of default on behalf of the Moving Defendants; and (2) hold in abeyance Defendant James's response to the complaint pending a decision on the Moving Defendants' motion to vacate. (See Oct. 22, 2007 Order; D.E. 22.) The Court now turns to the Moving Defendants'

---

conclusions of law. (See D.E. 15.) On May 10, 2006, Magistrate Judge Fox held a discovery hearing. On April 10, 2007, after learning that the Pro Se Office did not comply with the January 26, 2006 Order, Magistrate Judge Fox reissued his directive to the Pro Se Office to provide five copies of the inquest materials and the January 26, 2006 Order to the United States Marshal to be served on Defendants. (See Apr. 10, 2007 Order; D.E. 14.) On June 28, 2007, after learning that Plaintiff failed to complete forms necessary to effect such service, Magistrate Judge Fox ordered Plaintiff to complete the required forms. (See June 28, 2007 Order; D.E. 16.) The second round of service of the summons and complaint, which the Court assumes accompanied service of the inquest materials and the January 26, 2006 Order, followed soon thereafter.

4

motion to vacate.

**II. Discussion**

    **A.    Motion to Vacate the Entry of Default Standard**

"After default or a default judgment has been entered, Rule 55(c) grants a litigant the right to petition to set either aside. A party may move pursuant to Rule 55(c) to set aside the entry of default for 'good cause.'"[8] Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993) (citations omitted). Courts evaluate three factors in analyzing "good cause" under Rule 55(c): "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Id. at 96 (citations omitted).[9]

The Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995)

---

[8] Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). The Moving Defendants move pursuant to Rules 55(c) and 60(b). However, the Court applies the Rule 55(c) "good cause" standard, and not the more rigorous Rule 60(b) standard, because the Court never entered a default judgment in this action. Accordingly, Plaintiff's argument that the one year limitation period set forth in Rule 60(c)(1) bars the Moving Defendants' motion to vacate is without merit. (See Pl.'s Mem. 2, 4.)

[9] Courts may also consider "[o]ther relevant equitable factors" such as "whether the failure to follow a rule of procedure was a mistake made in good faith," "whether the entry of default would bring about a harsh or unfair result," and whether the "party held in default appears pro se." Enron, 10 F.3d at 96. However, the Moving Defendants do not rely on, and the evidence before the Court does not indicate, any relevant equitable factors to be considered.

5

(collecting cases). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Enron, 10 F.3d at 96.

**B.    The Willfulness Factor**

A finding of willfulness requires "more than mere negligence," more than "mere administrative or clerical error," and more than "careless or negligent errors." Am. Alliance Ins. Co., Ltd., 92 F.3d at 60-61. However, "the degree of negligence in precipitating a default is a relevant factor to be considered . . . in determining whether a default judgment should be vacated." Id. at 61. Specifically, "[g]ross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief." Id. Willfulness may be found where there is "evidence of bad faith," or the default arose "from egregious or deliberate conduct." Id. The Court finds that the conduct of the Moving Defendants does not rise to the level of willfulness.

**i.    Defendants Taylor and Brown**

Although the docket sheet indicates that the United States Marshals executed service of the summons and complaint on Defendants Taylor and Brown on June 30, 2005, both defendants declare that they "did not ever receive a summons and complaint regarding this case, either in person or in the mail, from anyone

6

from the U.S. Marshall's [sic] Office or from anyone within [the New York City Department of Corrections]."  (Evans Decl. Exs. C ¶ 4, D ¶ 4; D.E. 24.)  Both Defendants Taylor and Brown further declare that they had no knowledge of this action prior to October 12, 2007, when Corporation Counsel first contacted them. (See id. Exs. C ¶¶ 2-3, D ¶¶ 2-3.)

Plaintiff disputes the veracity of these declarations. Plaintiff alleges that Defendants Taylor and Brown "were served and I don't see how it was possible for them to have not gotten their mail."  (Pl.'s Mem. 7.)  Plaintiff further asserts that "I find it hard to [believe] that such an important piece of legal [mail] would not be handed over right away."  (Id.)  Plaintiff's speculative and conclusory allegations do not undermine the declarations of Defendants Taylor and Brown.  See Raheim, 2007 U.S. Dist. LEXIS 59573, at *13-14 (after considering "conclusory and speculative arguments by [the] plaintiff on the willfulness issue," finding that "nothing submitted to the Court by [the] plaintiff undermine[d the defendant's] statement in his declaration that he did not receive the various court documents at issue and that his failure to appear was not willful").

Accordingly, the Court finds that the conduct of Defendants Taylor and Brown does not rise to the level of willfulness.  See Dixon v. Ragland, No. 03 Civ. 826, 2005 U.S. Dist. LEXIS 23800, at *5 (S.D.N.Y. Oct. 14, 2005) (finding that the defendants' "statements that they lacked knowledge of [the] action raise

7

sufficient doubts as to whether their defaults were willful"). The Court thus finds that the willfulness factor weighs in favor of vacating the entry of default as to Defendants Taylor and Brown.

    **ii. Defendant Green**

Defendant Green declares that he received a copy of the summons and complaint in this action "[s]ometime between June 6, 2005 and July 5, 2005." (Evans Decl. Ex. E ¶ 2.) He further declares that "[o]n or about July 5, 2005, I completed a 'Request for Legal Assistance' form regarding this matter and returned it to" DOC Legal. (Id. ¶ 4.) Finally, he declares that he was not contacted by DOC Legal or Corporation Counsel until approximately September 28, 2007 when Corporation Counsel first contacted him. (See id. ¶¶ 5-7.)

The declaration of Linda Lidz, an associate attorney with DOC Legal, supports Defendant Green's account. Ms. Lidz declares that "[f]rom a review of the file, it appears that on or about July 5, 2005, [Defendant] Green returned a 'Request for Legal Assistance' form regarding this matter to" DOC Legal. (Evans Decl. Ex. F ¶ 5.) Ms. Lidz further declares that such a request "is typically forwarded to [] Corporation Counsel within five days of receipt," but based on her review of the file, Defendant Green's request "was never forwarded to [] Corporation Counsel." (Id. ¶¶ 6-7.)

Plaintiff disputes the veracity of these declarations.

8

(See Pl.'s Mem. 8-9.)  He implies that Defendant Green's failure to respond to the complaint was "a legal and [strategic] move on the defendant and his [attorney's] behalf."  (Id. at 9.) Plaintiff also alleges that Defendant Green willfully failed to check on the status of his defense in this action.  (See id. at 8 ("[A]fter not hearing anything from DOC Legal[,] what did [Defendant] Green do[?]  Nothing.").)  Plaintiff's speculation does not undermine the declarations of Defendant Green and Ms. Lidz.  See Raheim, 2007 U.S. Dist. LEXIS 59573, at *13-14.

Accordingly, the Court finds that Defendant Green's conduct does not rise to the level of willfulness.  See Jones v. Warden, Otis Bantum Corr. Ctr., No. 96 Civ. 386, 1997 U.S. Dist. LEXIS 21256, at *4 (E.D.N.Y. Dec. 15, 1997) (finding the defendant's conduct was not willful when his "office accepted the summons and sent the papers by messenger to [DOC Legal], indicating an intent to raise a defense to [the] action").[10]  There is insufficient

---

[10] The Court is mindful that in Dixon v. Ragland, another judge of the United States District Court for the Southern District of New York found that the defendants' failure "to diligently track the status of either their request for legal assistance or the [pending] action" for an extended period of time after "receipt of the summons and complaint" rose to the level of willfulness.  2005 U.S. Dist. LEXIS 23800, at *6.  In support of this finding, the Dixon Court emphasized that the defendants failed to offer an "explanation for their failure to respond to the complaint," and instead asserted only "that the legal materials sent to [DOC Legal] must have been misplaced."  Id. In contrast, the declarations of Defendant Green and Ms. Lidz, taken together, provide (1) an explanation for Defendant Green's failure to respond to the complaint, (2) sufficient evidence to demonstrate that DOC Legal mistakenly failed to act on Defendant Green's request, and (3) sufficient evidence to demonstrate Defendant Green's intent to raise a defense to this action.

9

evidence before the Court to find that Defendant Green's failure to follow up on the status of his "Request for Legal Assistance" or on the pending action was deliberate or done in bad faith. Assuming <u>arguendo</u> that Defendant Green's conduct was grossly negligent, such conduct weighs against, but does not preclude, vacating the entry of default as to Defendant Green. <u>See</u> <u>Am. Alliance Ins. Co., Ltd.</u>, 92 F.3d at 61 (finding that gross negligence "weighs somewhat against granting relief").

**C.   The Prejudice Factor**

"[D]elay alone is not a sufficient basis for establishing prejudice.  Rather it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion." <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks and citations omitted).

Plaintiff argues that he will suffer prejudice if the Court vacates the entry of default because the delay in this litigation has caused the loss of evidence, created discovery difficulties, and increased the opportunity for fraud and collusion.  (<u>See</u> Pl.'s Mem. 9, 14.)  Specifically, Plaintiff alleges that the following evidence can no longer be produced: audio tapes from the relevant disciplinary hearing, video feed from the location and time of the alleged incident underlying the disciplinary hearing, a logbook from the location and time of the alleged incident, and an unusual incident report.  (<u>See</u> <u>id.</u>)  Plaintiff

10

further alleges that the delay has provided the Defendants an opportunity "to conspire, cover up and [conceal] information, to make it seem[] as if the Plaintiff denied [himself] the right to attend the hearing [], call witness[es], [etc.]" (See id. 14.)

However, Plaintiff presents no evidence to establish that (1) the materials described above have been lost or destroyed (or that such materials ever existed), or (2) Defendants are conspiring to conceal relevant information. Accordingly, the Court finds that Plaintiff will not suffer prejudice if the Court vacates the entry of default.[11] Cf. Aetna Life Ins. Co. v. Licht, No. 03 Civ. 6764, 2004 U.S. Dist. LEXIS 21538, at *16 (S.D.N.Y. Oct. 25, 2004) (finding that the plaintiff would not suffer prejudice where the plaintiff failed to present any evidence to support his allegation that the defendants were "secreting their assets to frustrate a possible future money judgment"). The Court thus finds that the prejudice factor weighs in favor of vacating the entry of default as to all three of the Moving Defendants.

### D. **The Meritorious Defense Factor**

To assess the meritorious defense factor, the Court analyzes "whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron, 10 F.3d at 98 (citations omitted). On a motion to vacate the entry of default, the moving

---

[11] In further support of this finding, the Court notes that the Defendants have produced several documents related to the alleged incident and the relevant disciplinary hearing. (See D.E. 26.)

11

party "need not conclusively establish the validity" of the defense presented. Davis, 713 F.2d at 916.

Plaintiff's action rests on a claim that he was deprived of the right to due process in March 2005, during his incarceration at Rikers Island. Specifically, Plaintiff alleges that he was not allowed to (1) participate in a disciplinary hearing, or (2) call witnesses at the hearing. (See Compl. ¶ II(D).) As a result of the disciplinary hearing, Plaintiff was (1) denied visitation for thirty days (see Pl.'s Mem. Ex. D), and (2) allegedly placed in disciplinary housing for thirty days (see id. at 12-13; see also Compl. ¶ V).

The Court finds that the Moving Defendants present a meritorious defense to Plaintiff's claim.[12] The Moving Defendants argue that Sandin v. Conner, 515 U.S. 472 (1995), precludes Plaintiff's claim. In Sandin, the Supreme Court of the United States held that a prisoner can establish a violation of due process only if he can identify a deprivation of a liberty

---

[12] The Court notes that the Moving Defendants present four defenses. (See Defs.' Mem. 15-20; D.E. 25.) Because the Court finds that the defense discussed in the text satisfies the standard for the meritorious defense factor, it does not reach the Moving Defendants' three other defenses.
Although the Court does not reach the Moving Defendants' argument that Plaintiff's § 1983 claim is barred under Edwards v. Balisok, 520 U.S. 641 (1997), the Court offers the following observations: Edwards does not preclude a § 1983 claim for denial of due process at a disciplinary hearing where the resulting sanctions affect only the conditions of the prisoner's confinement. See Muhammad v. Close, 540 U.S. 749, 754 (2004); Jenkins v. Haubert, 179 F.3d 19, 21 & 27-28 (2d Cir. 1999). Plaintiff alleges that as a result of his disciplinary hearing, he was denied visitation and placed in disciplinary housing for thirty days. These sanctions affect only the conditions of Plaintiff's confinement. See Jenkins, 179 F.3d at 27-28.

interest. 515 U.S. at 484. The Supreme Court further held that such liberty interests are generally limited to a prisoner's "freedom from restraint which . . . imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life." Id. (citations omitted); see also Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir. 2007) (finding that "[s]ince Sandin," the Second Circuit has held that a prisoner cannot establish a due process violation of a "protected liberty interest" unless "the deprivation . . . is atypical and significant") (internal quotation marks and citations omitted).

The Moving Defendants argue that Plaintiff's temporary deprivation of visitation and placement in disciplinary housing do not constitute an "atypical and significant hardship." (See Defs.' Mem. 17-18.) Accordingly, the Moving Defendants "give the factfinder some determination to make" and thereby present a meritorious defense. See Am. Alliance Ins. Co., Ltd., 92 F.3d at 61 (internal quotation marks and citation omitted). The Court thus finds that the meritorious defense factor weighs in favor of vacating the entry of default as to all three of the Moving Defendants.

**III. Conclusion**

The Court finds that the willfulness factor weighs in favor of vacating the entry of default as to Defendants Taylor and Brown. Assuming arguendo that Defendant Green's conduct was grossly negligent, the Court finds that the willfulness factor

13

weighs against, but does not preclude, vacating the entry of default as to Defendant Green. The Court further finds that the prejudice factor and the meritorious defense factor weigh in favor of vacating the entry of default as to all three of the Moving Defendants. Accordingly, the Court grants the motion to vacate the entry of default against Defendants Brown, Green, and Taylor. (See D.E. 24.)

The Court also (1) withdraws the referral of this action to Magistrate Judge Fox for an inquest after default (see D.E. 9); (2) refers this action to Magistrate Judge Fox for general pretrial matters and dispositive motions (see attached Order of Reference); and (3) grants Defendants permission to serve and file a motion to dismiss in lieu of an answer. The Court sets the following briefing schedule for the Defendants' motion to dismiss: Defendants shall serve and file a motion to dismiss no later than September 19, 2008. Plaintiff shall serve and file any opposition no later than November 14, 2008. Defendants shall serve and file any reply no later than December 5, 2008. The Court directs the parties to submit any written requests for extensions of time to Magistrate Judge Fox.

SO ORDERED.

Dated:   New York, New York
         August 21, 2008

_____
Kimba M. Wood
United States District Judge

14